UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

JOSEPH MILLER JR #708796                CASE NO.  3:20-CV-01397 SEC P

VERSUS                                  JUDGE TERRY A. DOUGHTY

JASON KENT                              MAG. JUDGE KAYLA D. MCCLUSKY

## REPORT AND RECOMMENDATION

Petitioner Joseph Miller, Jr., an inmate in the custody of Louisiana's Department of

Corrections proceeding *pro se*, filed this Petition for Writ of Habeas Corpus under 28 U.S.C. §

2254 on approximately October 23, 2020. [doc. # 1]. He attacks his aggravated-second-degree-

battery conviction and resulting ten-year sentence imposed by the Fifth Judicial District Court,

Richland Parish.[1] For reasons below, the Court should deny Petitioner's claims and dismiss his

Petition.

## Background

The Louisiana Court of Appeal for the Second Circuit recounted the underlying state

court procedural history as follows:

> The defendant, Joseph Miller, Jr., and the victim, Linda Young, were involved in a
> romantic relationship. On October 8, 2014, Young was at her home in Delhi, Louisiana.
> At approximately 9:00 p.m., Young's aunt came to her home and asked Young to drive
> her "to town." As the two women exited the house, they observed the defendant sitting
> under a tree in Young's front yard. As she was leaving with her aunt, Young informed the
> defendant that a man named Larry Rancher had repaired her washing machine.
> Thereafter, Young and her aunt left the home in Young's vehicle. As they were riding,
> her aunt cautioned Young about the defendant's possessive and violent character.

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under
28 U.S.C. § 636 and the standing orders of the Court.

When Young returned home approximately 30 minutes later, she did not see the defendant in the yard. She entered her home and went directly to the bathroom. The defendant approached her from behind and demanded, "How did you pay [Rancher]? Did you f**k him?" Young replied, "No" and told the defendant to "get [his] crazy self out of [her] house." The defendant walked out of the room, then returned and struck Young from behind, knocking her to the floor. Thereafter, using a kitchen knife, the defendant stabbed Young once in the back, along her spine, and once in the upper abdominal area under one of her breasts. The incident was witnessed by Young's nine-year-old son and 13-year-old grandson. Young's grandson ran to a neighbor's house for assistance; Young was transported to the hospital by a family member.

By the time law enforcement officers arrived on the scene, the defendant had fled. A police officer interviewed Young at the hospital and she identified the defendant as her attacker. Young's grandson also informed police officers that the defendant had stabbed Young. The defendant was apprehended the same night.

The defendant was charged by bill of information with aggravated second degree battery, in violation of La. R.S. 14:34.7. Following multiple pretrial motions and hearings, the defendant and the state reached a plea agreement, whereby the defendant pled guilty as charged and the state agreed to a sentencing cap of no more than 12 years' imprisonment at hard labor. Thereafter, the trial court sentenced the defendant to serve 10 years at hard labor. Subsequently, the trial court denied the defendant's motion to reconsider sentence.

*State v. Miller*, 52,211 (La. App. 2 Cir. 8/15/18), 254 So. 3d 23, 24–25 (explanatory footnotes

omitted).

Petitioner pled guilty to aggravated second-degree battery on March 9, 2016.  [doc. # 1, p. 1]. The statutory maximum was fifteen years, but Petitioner's plea agreement included a sentencing cap of twelve years. [doc. # 12-3, p. 3]. On March 11, 2016, the trial judge sentenced Petitioner to prison for ten years. [doc. # 12-3, p. 17].  On June 10, 2016, Petitioner's counsel filed a motion to reconsider sentence. [doc. # 1-3, pp. 33, 49]. On March 8, 2017, the trial court denied the motion. [doc. # 12-3, p. 39].

Petitioner appealed, and on August 15, 2018, the Court of Appeal of Louisiana, Second Circuit, affirmed his conviction and sentence. *State v. Miller*, 254 So. 3d 23, 27 (La. App. 2 Cir. 2018). Petitioner did not pursue further review before the Supreme Court of Louisiana. [doc. # 1, p. 2].

On approximately October 12, 2018, Petitioner filed an application for post-conviction relief before the trial court. [doc. #s 1, p. 2; 1-3, p. 2]. On May 23, 2019, the court denied his application. [doc. # 1, p. 4]. On June 6, 2019, he applied for supervisory review before the Court of Appeal of Louisiana, Second Circuit. [doc. #s 1, p. 2; 3, p. 18].  On July 25, 2019, the appellate court denied his application. [doc. # 1-3, p. 21]. On August 8, 2019, he applied for a supervisory writ before the Supreme Court of Louisiana. [doc. # 1, p. 3]. On August 14, 2020, the court denied his application. [doc. # 1-3, p. 23].

Petitioner filed this proceeding on approximately October 23, 2020. [doc. # 1, p. 8]. He claims: (1) his counsel failed to object to information in a pre-sentence investigation report; (2) the trial court should not have conducted a hearing on his motion to reconsider sentence without his counsel present; and (3) his appellate counsel failed to claim that his counsel at sentencing rendered ineffective assistance.  [doc. # 1-2].

On December 9, 2020, after finding that Petitioner exhausted only claims (1) and (3) above and that he therefore presented a "mixed" petition, the undersigned ordered Petitioner to advise the Court whether he wished to: (1) voluntarily dismiss his unexhausted claim and proceed with only the exhausted claims; (2) dismiss the entire proceeding without prejudice, try to exhaust the unexhausted claim, and then return to federal court; or (3) move to stay the petition and then attempt to return to state court and exhaust his unexhausted claims. [doc. # 4]. On December 30, 2020, Petitioner chose the first option, effectively electing to amend his Petition,[2] voluntarily dismiss his unexhausted claim, and proceed only with his exhausted claims. [doc. # 5].

---

[2] In granting Petitioner the option to dismiss his unexhausted claim, the undersigned effectively granted Petitioner leave to amend his pleading. *See* FED. R. CIV. P. 15(a)(2).

3

**Law and Analysis**

The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). First, Petitioner must show that counsel's performance was deficient: that is, "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Second, Petitioner must show that the deficient performance prejudiced the defense. *Id*.

Performance is deficient when "counsel's errors were so serious as to deprive the defendant of a fair trial." *Id*. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable. *Id*. at 687. The "standard for attorney performance is that of reasonably effective assistance." *Id.* (citing *Trapnell v. United States*, 725 F.2d 149, 151-52 (2d Cir. 1983)). An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment. *Id.* (citing *United States v. Morrison*, 449 U.S. 361, 364–65 (1981)). In assessing counsel's performance, the court must make "every effort . . . to eliminate the distorting effects of hindsight." *Strickland*, 466 U.S. at 689.

1. **Ineffective Assistance of Trial Counsel**

Petitioner claims that his trial counsel was ineffective because counsel failed to correct alleged inaccuracies in the presentence investigation report. [doc. # 1-2, p. 3].[3] Specifically,

_____

[3] Petitioner voluntarily dismissed his other claim of ineffective assistance of trial counsel, that the court should not have conducted a hearing on his motion to reconsider sentence without his

Petitioner claims that counsel should have objected to the inclusion of a 1991 arrest for

homicide. [doc. # 1-2. p. 3]. Under Fifth Circuit precedent, the defendant has the burden of

demonstrating that a presentence investigation report is inaccurate. *United States v. Patten*, 40

F.3d 774 (5th Cir. 1994). A district court may not rely on the existence of an arrest record

without supporting facts and circumstances of the conduct resulting in the arrest. *United States v.*

*Windless*, 719 F.3d 415, 420 (5th Cir. 2013). Further, where a sentencing hearing has been held,

there must be a showing of reasonable probability that presentation of the additional evidence

would have changed the outcome at sentencing. *Schriro v. Landrigan*, 550 U.S. 465 (2007).

      Here, the court explained for the record at the sentencing hearing that the 1991 arrest did

not result in charges or any conviction; therefore, Petitioner had no criminal history for

sentencing purposes. [doc. #12-3, p. 9]. Further, in the sentencing memorandum submitted to the

court on behalf of Petitioner by his public defender, counsel explained the 1991 arrest incident to

the Court as follows:

> Joseph suffered a tragic loss almost twenty years ago when he was living in Kansas City. He came home to find his wife brutally murdered. After two decades, her murderer has still not been found. Joseph began abusing alcohol and drugs in an attempt to deal (or not have to deal) with the murder of his wife. He continued to live in the Kansas City/Missouri area for many years after her death. He moved back home to Delhi in 2014.
>
> Mr. Miller does not have a serious criminal history. He has no prior felony convictions. He believes he had some misdemeanor arrests many years ago for disturbing the peace and driving under the influence when he was living in Kansas City. Since he discovered his wife's body, he was questioned by law enforcement. During the questioning, he was arrested on what he believes was a misdemeanor warrant. Joseph was never charged with his wife's murder.

[doc. # 12-2, p. 41].

---

counsel present, because it was not exhausted. Accordingly, the court will address only his claim of ineffective assistance for failure to object to or correct alleged inaccuracies in the presentence investigation report.

There is no indication that the sentencing judge considered the arrest as an unfavorable factor

prejudicial to Petitioner. In fact, the judge listed the 1991 murder of Petitioner's wife as a

mitigating factor, clearly indicating that the court did not hold the arrest against Petitioner in his

sentencing. [doc. # 12-3, p. 16].

During this sentencing hearing, the court allowed the petitioner the opportunity to speak.

The court recited facts gleaned from the presentence investigation report, as well as other

documentation provided by both the State and the defense, and directly asked the petitioner if

there was anything stated incorrectly. Petitioner did not object to the facts stated by the judge.

Further, Petitioner entered into a favorable plea agreement with a sentencing cap below the

statutory maximum, and the sentence actually imposed was even shorter than the cap negotiated

in the plea agreement. [doc. # 12-3, p. 3]. Counsel adequately explained the facts surrounding the

1991 arrest incident, and the record shows that the disclosure of the incident did not negatively

impact Petitioner's sentence. Accordingly, the court finds that the record does not support

Petitioner's claim of ineffective assistance of trial counsel and recommends dismissal of this

claim.

### 2. Ineffective Assistance of Appellate Counsel

Petitioner also claims that his appellate counsel was ineffective for failure to challenge

the effectiveness of Petitioner's trial counsel. The Supreme Court has held that "[e]ffective

appellate counsel should not raise every nonfrivolous argument on appeal, but rather only those

arguments most likely to succeed." *Davila v. Davis*, 137 S. Ct. 2058, 2067 (2017)(citing *Smith v.

Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes*, 463 U.S. 745, 751–753 (1983)). Declining

to raise a claim on appeal does not constitute deficient performance unless that claim was plainly

stronger than those actually presented to the appellate court. *Id*. (citing *Smith v. Robbins*, 528 U.S. 259, 288 (2000)).

Here, the claim that Petitioner's trial counsel was ineffective was not plainly stronger than the arguments actually presented to the appellate court. On appeal, appellate counsel argued that the trial court erred by (1) finding that Petitioner's plea was voluntary because there was not a sufficient factual basis and (2) conducting a hearing on Petitioner's motion to reconsider without his attorney present. Petitioner argues that trial counsel was ineffective for failing to object to the inclusion of his 1991 arrest in the presentence investigation report. Given that trial counsel provided an explanation[4] for Petitioner's 1991 arrest and the judge indicated that the arrest did not amount to a criminal record and would not negatively impact sentencing, the argument that trial counsel was ineffective was not plainly stronger than the arguments advanced by appellate counsel. Accordingly, appellate counsel's declination to present this argument on appeal does not amount to deficient performance, and the undersigned recommends dismissal of this claim as well.

## Conclusion

For the foregoing reasons,

IT IS RECOMMENDED that Petitioner's claims under 28 U.S.C. § 2254 be denied and his petition DISMISSED.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within

---

[4] The judge noted that Petitioner's counsel "did a really good job" in summarizing the factors bearing on Petitioner's sentence in a multipage letter. [doc. # 12-2, p. 134-34].

**fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before the Judge makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 1st day of June, 2021.

_____

KAYLA D. MCCLUSKY
UNITED STATES MAGISTRATE JUDGE